IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

VELITA GLASGOW, Special Administrator, )
of the ESTATE OF CURTIS BRADFORD, )
)
      Plaintiff, )
)
vs. )
)
STATE OF NEBRASKA, DEPARTMENT OF )
CORRECTIONS; ROBERT HOUSTION, )     COMPLAINT and
Retired Nebraska Director Corrections, in his )     JURY DEMAND
Official and individual capacities; CAMERON )
WHITE, Behavioral Health Administrator for )
the Nebraska Department of Corrections, in his )
official and individual capacities; CORRECT )
CARE SOLUTIONS; DR. NATALIE BAKER, )
in her official and individual capacities; and )
DR. RANDY KOHL, in his official and )
individual capacities. CITY OF OMAHA, )
John Doe Defendants 1-100, in their individual )
and official capacities; COUNTY OF )
DOUGLAS, John Doe Defendants 1-100 in )
Their individual and official capacities )
)
      Defendants. )

1.    Plaintiff, Velita Glasgow is the mother of Curtis Bradford and the

Special Administrator of the Estate of Curtis Bradford. Mr. Bradford is survived

by his parents, Velita Glasgow and Clifford C. Glasgow, Jr. The heirs and next of

kin of Curtis Bradford have all suffered the loss of society, financial support,

love, services, comfort and companionship.

1

2. The Defendant State of Nebraska operates the Department of Corrections, which is the State entity that was responsible for the incarceration, treatment and release of Nikko Jenkins.

3. That the Plaintiff, prior to filing this lawsuit, filed a Tort Claim with the State of Nebraska Risk Manager. The Plaintiff withdraws this claim because the State has taken no action. As a result, the condition precedent to the filing of this lawsuit has been complied with by the Plaintiff.

4. At all times relevant, Defendant Robert Houston was the Director of the Department of Corrections.

5. Defendant Cameron White, PhD, is the behavioral health administrator for the Department of Correctional Services.

6. Defendant Correct Care Solutions is a Kansas corporation, with home offices in Nashville, Tennessee. Defendant Correct Care Solutions contracts with the State of Nebraska to provide medical services for inmates incarcerated at the Tecumseh, Nebraska facility. Correct Care Solutions' employees and agents evaluated and treated Jenkins while he was held at the facility.

7. Defendant Natalie Baker is a physician who worked at the Tecumseh State Prison Facility under the direction and control of Defendant DCS and Correct Care Solutions. Defendant Baker was responsible in large part for

2

the mental health care, evaluation and treatment, or lack thereof of, given to
Jenkins while he was incarcerated at that facility.

8. Defendant Dr. Randy Kohl is the DCS Deputy Director of Health
Services and has the overall responsibility for the administration of mental health
services, diagnosis and treatment for all inmates in the Nebraska Penal System.

9. At all times alleged herein, the individual Defendants listed above
and their agents were acting within the scope and course of their employment
with their various employers.

10. This jurisdiction of this Court is proper as Curtis Bradford was
brutally murdered in Omaha, Douglas County, Nebraska on or about August 19,
2013.

11. At all times alleged, the State of Nebraska was also responsible for
detaining prisoners/inmates committed to correctional facilities by reason of
criminal conviction (either by verdict or plea). Upon information and belief and
at all times alleged, the State of Nebraska was responsible for operating,
maintaining and overseeing certain correctional facilities located within the State
of Nebraska.

12. The State of Nebraska was also responsible for training, hiring,
supervising and monitoring persons who worked in said facilities. The State of
Nebraska was also responsible for contracting for services from third parties as

3

needed by the detainees/prisoners as directed by the specific needs of the prisons population, and for hiring, training, supervising and monitoring said contractors.

13. The State of Nebraska was also responsible for determining the type and number of personnel or other contract agents needed at each correctional facility in order to provide necessary and/or appropriate services to the inmates/detainees such as mental health professionals or other persons or professionals as dictated by the needs of the inmate population.

` 14. At all times alleged, the State of Nebraska was responsible for maintaining an appropriate prisoner/inmate population in each facility consistent with the population limitation for each correctional facility as dictated by physical space, staffing considerations and other factors to ensure that overcrowding was not occurring in any correctional facility owned, operated and maintained by the State of Nebraska. At all times relevant, the correctional facilities owned and operated and maintained by the State of Nebraska was estimated at 50 percent over capacity.

15. At all times alleged the State of Nebraska was responsible for providing adequate advance notice to members of the public regarding the release of a dangerous individual who had threatened serious bodily harm to himself or to others.

4

16.     At all times alleged the State of Nebraska was also responsible for assessing and evaluating inmates for purposes of determining the need for mental health commitment and/or other appropriate mental health services. The State of Nebraska is also responsible for ensuring that inmates comply with mental health treatment recommendations and treatment plans, by ensuring that inmates (a) take prescribed medications as directed; (b) participate in appropriate measures to seek mental health commitment for those inmates who are in need of such commitment as required by policy, rule, regulation or law.

17.     The State of Nebraska is responsible for enforcing, applying, interpreting, implementing and complying with the rules, regulations, policies, procedures and laws regarding the detainment, detention, incarceration, release, assessment, evaluation, diagnosis, treatment and commitment of inmates/prisoners committed to correctional facilities or other appropriate mental health facilities that are owned and operated by the State of Nebraska. The State has a concurrent duty to protect its citizens from said inmates who cannot function in society at large.

18.     Sometime in spring of 2013, Defendant Houston directed Defendant White to do the following:

   a.     Reduce the inpatient treatment program from 10 months to 6 month; and

b. Houston gave White a list of inmates, believed to number in hundreds and told him to change all clinical recommendations from inpatient to outpatient treatment so that they would be eligible for release from the Department of Corrections.

19. Nikko Jenkins was one of the inmates on the list of prisoners given to Defendant White.

20. White changed the recommendation on Jenkins from inpatient to outpatient treatment which accelerated his release from the Department of Corrections.

21. Houston threatened White to do these actions or else his employment would be terminated. Though White initially protested, he ultimately went along and did as instructed, changing the medical recommendations for these prisoners.

22. When confronted about this decision, Houston stated, to Deputy Director Frank Hopkins, "It won't make much difference, they would be out in 9 more months anyway," or words to that effect.

23. On various dates, Defendant Baker personally interviewed and/or evaluated Jenkins in response to Jenkins' recent behaviors, including but not limited to the following:

6

a.    On August 27, 2009, responding to staff reports, Baker visited

      Jenkins and reported that "Jenkins was narcissistic, but that his

      thoughts appeared well managed."

b.    On or about December 3, 2009, Baker met with Jenkins, who told

      her he had been hearing the voice of an Egyptian god who told him

      to harm others.  Because he had not taken all of his medication

      Baker discontinued his prescriptions, and concluded "he is not an

      immediate danger to himself or others at this time.

c .   On or about December 28, 2009, in response to Jenkins' request,

      Baker renewed his prescriptions and noticed that he was

      "attempting to use his mental health symptoms for secondary

      gain."

d.    On or about September 26, 2011, Baker interviewed Jenkins about

      his terrors and physical threats.  She noted that he had

      "questionable delusions" and that he was focused on wanting a

      transfer to the Regional Center.

e.    On or about December 23, 2011, Jenkins again told Baker he often

      had violent thoughts and feels he will  hurt others when released.

      Baker's response was that Jenkins was "easily agitated and

      manipulative."

7

f.     On or about April 19, 2012, Baker met with Jenkins again and

noted that he wanted to be transferred to the Regional Center for

mental health treatment.

g.     On or about July 2, 2012, Baker interviewed Jenkins and concluded

that "he had not major medical  mental illness."

h.     On or about March 4, 2013, Baker expressed concerns about

verifying the absence or presence of a mental health illness in

Jenkins.  From March 5-7, 2013, Jenkins repeatedly told staff

evaluators he did not want to be released into the community

because he will kill people.

At the conclusion of this process, Baker did nothing more to get Jenkins

evaluated at the Regional Center and allowed him to be released.

24.     In performing the evaluation and diagnosis set forth above.

Defendants acted with deliberate indifference to the established policies,

practices or customs governing treatment and incarceration, which caused the

injuries suffered by Curtis Bradford, failed to follow commonly accepted medical

practices, and basically showed no common sense, given Jenkins' consistent

history of psychotic behavior and continuing efforts of trying to get himself

committed to the Lincoln Regional Center for a mental health evaluation and

treatment.

8

**25.** Defendant the City of Omaha and the County of Douglas and all employees were aware of the criminal activities and the criminal propensity of Nikko Jenkins prior to the attack on Curtis Bradford but failed to take appropriate steps to prevent the attack by Jenkins on Curtis Bradford.

26. All defendants, which include but is not limited to defendants the City of Omaha, Douglas County through their employees and agents had information and evidence that Jenkin's attack and the killing of Curtis Bradford was foreseeable based upon his conduct while a prisoner, his propensities for criminal behavior, failed to issue an order or communicate the Omaha Police and to commit Nikko Jenkins based upon the letters written in jail stating that if he was released that he would kill and his troubled background; which was evidenced by his killing of Juan Uribe-Pena and Jorge Cajiga-Ruiz on August 11, 2013.

27. Upon information and belief, John Doe officers are residents of Omaha, Nebraska, and are employed as police officers by the Defendants Omaha Police Department. John Doe failed to protect Curtis Bradford and citizens of Omaha and by negligently conducting investigations into the deaths of Juan Uribe-Pena and Jorge Cajiga-Ruiz on August 11, 2103.

28. Defendant John Doe, Chief of Police of the City of Omaha, failed to protect Curtis Bradford and citizens of Omaha and negligently conducted

9

investigations into the deaths of Juan Uribe-Pena and Jorge Cajiga-Ruiz on
August 11, 2103. residents of Omaha, Douglas County, Nebraska. Defendants
Douglas County District Court Judge John Doe, are residents of Douglas County,
Nebraska.

29.   On April 16, 2014, Nikko Jenkins pled no contest to four counts of murder
which is a class 1 felony, in addition, he pled no contest to four counts of use of a firearm
to commit a felony which is a class 1c felony and he pled no contest to four counts of
possession of a firearm by a prohibited person in case number CR 13 2768 in the Douglas
County District Court, Omaha, Nebraska.

30.   The Defendants deprived Curtis Bradford of his Constitutional
rights to be free from deprivation of life and liberty without due process of law,
under the laws of the United States by releasing Jenkins and other inmates
despite the behaviors they exhibited and medical recommendations that they
receive inpatient treatment for severe mental health conditions.

31.   On or about July 30, 2013, the State of Nebraska released Jenkins a
violent and dangerous criminal, from incarceration at a Nebraska correctional
facility. In the 10 ½ years he had been incarcerated in one or more of the
Nebraska correctional facilities. Jenkins engaged in numerous violent activities
and other conduct which violated corrections rules, policies and procedures.,
more inmates which resulted in bodily harm; attempting to escape or flee;

10

refusing to submit to searches; engaging in gang related activities and possessing a dangerous weapon.

32.     Over the course of Jenkins incarceration, Jenkins repeatedly exhibited signs of serious mental health issues. He repeatedly requested treatment and/or commitment for mental health conditions. The requests for treatment were denied. Defendants failed to adequately supervise Jenkins in order to ensure compliance with his treatment plan. Rather than seek mental health commitment for Jenkins prior to his release from prison, the State of Nebraska released him from custody.

33.     Defendants Houston, White, Baker and Kohl are sued in their individual and official capacities as they acted to deprive Curtis Bradford of his Constitutional rights, privileges and immunities under the constitution of the United States, acted with a deliberate indifference to the mental health needs of an inmate under their custody and control (Jenkins), were aware of facts from which the inference could be drawn that Jenkins, when released, presented a substantial risk of serious harm to Curtis Bradford and the citizens of Nebraska, and in fact, drew that inference. Each Defendant, through his or her own actions has violated the Constitution of the United States. Curtis Bradford's death resulted from the Defendants' policies or customs related to the treatment, evaluation and incarceration of inmates exhibiting symptoms of a mental illness

and their failure to follow the established policies, practices or customs or established proper policies and practices.

34.     While Jenkins had been sentenced to serve 21 years for his crimes, he was released from prison after serving 10 ½ years. The State of Nebraska failed to properly calculate and/or apply "good time" for Jenkins in ordering his release on July 30, 2013. Defendants had actual or constructive knowledge of Jenkins' desire to cause serious bodily harm or kill others prior to his release from prison.

35. This action is brought for damages for under 42 USC § 1981 and 42 USC § 1983 for violation of the Plaintiffs Federal Civil Rights by the Defendants whose actions were taken under color of state law pursuant to Neb. Rev. Stat. § 25-219. This action arises under the Constitution and laws of the United States, particularly the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States and the State of Nebraska, the Civil Rights Act, Title 42 U.S.C. Section 1981, 1983, 1985, 1986,and 1988. Jurisdiction is conferred upon this court by Neb. Rev. Stat. § 25-219, 28 USC §1331 and 28 USC §1343(a) (3). Venue of this action is proper under 28 USC §1391(b).

36. The jurisdiction of this Court is invoked for plaintiff's causes of action under the provisions of 28 U.S.C. Sections 1331 and 1343, which confer original jurisdiction on Federal District Courts to sit and redress the deprivation under color of statute, ordinance, regulation, custom, or usage of rights, privileges, and immunities secured to the plaintiff by the Fourteenth Amendment to the Constitution of the United States; including the

12

right to due process and equal protection of the law. Plaintiff has complied with the Political Claims Tort Act Neb. Rev. Stat. § 13-901.

37.   As a result of Defendants City of Omaha, County of Douglas, Houston, White, Baker and Kohl actions, inactions, and decisions set forth herein, Jenkins killed Curtis Bradford in an unprovoked attack on August 19, 2013.  The Defendants created the dangerous situation and harm that happened to Curtis Bradford.

38.   The sole and proximate cause of the death of Curtis Jenkins, the injuries and damages suffered by the Plaintiffs and the incident heretofore described was due to the negligence of the Defendants.

## FIRST CAUSE OF ACTION

39.   Plaintiff incorporates 1-38 as though fully herein.

40.   Defendants brought about Curtis Bradford's death by acting with deliberate indifference to Curtis Bradford's constitutional rights under the United States Constitution.

41.   The action(s) of one or more of the Defendants and their employees, agents, personnel, officers, contractors and/or other persons acting within the scope and course of their employment and/or contract with the State of Nebraska in the performance of their duties violated Curtis Bradford's rights as follows:

a. Failing to properly enforce, apply, interpret, calculate, implement and comply with the rules, regulations, polices, procedures and laws regarding the detainment, sentencing, detention, incarceration, commitment and release of inmates.

b. Failing to properly comply with rules, regulations, policies, procedures and/or laws with respect to "good time" credited to inmates for good behavior while incarcerated.

c. Failing to deduct and/or alter "good time" credit from an inmate's sentence after the inmate had exhibited violent and/or insubordinate conduct during the inmate's term of incarceration and/or engagement in other conduct which violates established policies, procedures and/or rules.

42.    Defendants' actions deprived Curtis Bradford of his life and liberty without due process of law in violation of the Fourteenth Amendment to the Federal Constitution.

43.    Defendants' conduct as set forth above resulted in Curtis Bradford's death.

44.    Defendants Houston, White, Baker and Kohl violated 42 U.S.C. §1983 as they established polices and practices that were intended to and did encourage, endorse and reward their agents and employees for violating Curtis

14

Bradford's constitutional rights under the United States. At the very least,

Defendants acted with deliberate indifference to Bradford's constitutional rights

under the United States. As set forth above, the intentional or reckless

misconduct of the Defendants entitles Plaintiff to punitive damages in an amount

to be determined at trial.

WHEREFORE, Plaintiff seeks judgment against Defendants, Houston,

White, Baker and Kohl in an amount which will fairly and justly compensate the

estate for the loss of society, financial support, love, services, comfort and

companionship and all other elements and general damages together with the

damages appropriate together with the costs of this action, attorney fees and

punitive damages and such other and further relief as the Court deems

appropriate under the circumstances.

## SECOND CAUSE OF ACTION

45.    Plaintiff incorporates paragraphs 1-44 as though fully set forth

herein.

46.    Prior to his death Curtis Bradford suffered conscious pain,

suffering and fear of impending death.

WHEREFORE Plaintiff requests judgment against the Defendants in an

amount which will fairly and justly compensate the Estate for the conscious pain,

suffering and fear of impending death suffered by Curtis Bradford as a result of

15

the above named Defendants' violation of 42 U.S.C. § 1983 together with punitive damages and the costs of this action and reasonable attorney's fees and such other and further relief as the Court deems just.

## THIRD CAUSE OF ACTION

47. Plaintiff incorporates paragraphs 1-46 as though fully set forth herein.

48. As a proximate result of the violation 42 U.S.C. § 1981 and 42 U.S.C. § 1983 the Plaintiff incurred healthcare expenses and funeral expenses; the exact amount will be set forth with particularity upon completion of discovery.

WHEREFORE, Plaintiff prays for judgment against the Defendants and each of them for all healthcare and funeral expenses, together with punitive damages, the costs of this action, including reasonable attorneys' fees and such other and further relief as the Court deems just.

## FOURTH CAUSE OF ACTION

49. Plaintiff incorporates paragraphs 1-49 as though fully set forth herein.

50. The State of Nebraska by and through its employees, contractors agents and officers had a duty to Curtis Bradford in that:

      a. The magnitude of the risk of harm to Curtis Bradford was great as Nikko Jenkins had informed employees, contractors,

16

officers and/or agents of the Defendant of the State of Nebraska
that he intended to murder persons at random. The State had a
duty to Curtis Bradford insofar it was aware that Nikko Jenkins did
not have any specific person in mind to kill; rather he intended to
commit random acts of violence against the public. Because the
State of Nebraska processed this knowledge and released

b.      Curtis Bradford was placed at great risk of harm when
Nikko Jenkins was released.

c.      The State was the only entity that had the opportunity and
ability to exercise care to protect Curtis Bradford by not releasing
Nikko Jenkins.

d.      The State knew or should have known of the foreseeability
of harm to Curtis Bradford in the event Nikko Jenkins was released.

e.      The State was aware of the risk of injury and that said risk
was great. The State was aware that releasing Nikko Jenkins
created a hazard or consequence of great harm to individuals
including Curtis Bradford, all of which was reasonably foreseeable.

WHEREFORE Plaintiff seeks judgment against the Defendants Houston,
White, Baker and Kohl in an amount which will fairly and justly compensate the
estate of the loss of society, financial support, love, services, comfort and

17

companionship and all other elements and general damages together with the

damages appropriate together with the costs of this action, attorneys fees and

punitive damages and such other and further relief as the Court deems

appropriate under the circumstances.

## FIFTH CAUSE OF ACTION

51.     Plaintiff incorporates paragraph 1-50 as though fully set forth

herein.

52.     Prior to his death Curtis Bradford suffered conscious pain,

suffering and fear of impending death as a result of the negligence of the

Defendant the State of Nebraska.

WHEREFORE, Plaintiff requests judgment against the Defendant in an

amount which will fairly and justly compensate the Estate for the conscious pain,

suffering and fear of impending death suffered by Curtis Bradford as a result of

the negligence of the above named Defendant the State of Nebraska together

with the costs of this action and reasonable attorneys fees and such other and

further relief as the Court deems just.

## SIXTH CAUSE OF ACTION

53.     Plaintiff incorporates paragraphs 1-52 as though fully set forth

herein.

18

54. As a proximate result of the negligence of the Defendant the State of Nebraska the Plaintiff incurred healthcare expenses and funeral expenses; the exact amount will be set forth with particularity upon completion of discovery.

WHEREFORE Plaintiff prays for judgment against the Defendant for all healthcare and funeral expenses, together with the costs of this action, including reasonable attorneys fees and such other and further relief as the Court deems just.

## SEVENTH CAUSE OF ACTION

55. Plaintiff incorporates paragraphs 1-54 as though fully set forth herein.

56. That the causes of action herein arose out of deficient medical services provided by the Defendant and/or its employees or agents to Nikko Jenkins.

57. That as a result of the lack of reasonable and ordinary care, skill and diligence on the part of the Defendants and/or their employees and/or agents and staff members, and each of them Curtis Bradford was murdered.

58. That the medical treatment rendered by the Defendants and their agents and employees to Nikko Jenkins was beneath the standard of care for Douglas County, Lancaster County and Johnson County Nebraska.

19

59.    Defendants Baker and Correct Care Solutions owed a duty to the

citizens of Nebraska to correctly evaluate and treat all inmates under their care

by virtue of their respective contracts to provide appropriate and reasonable

medical personnel and treatment to any inmate sent to them by the Nebraska

Department of Corrections.

60.    Defendants Baker and Correct Care Solutions breached that duty in

their treatment and release of Nikko Jenkins.

61.    Defendants breach of their duty resulted in the death of Curtis

Bradford.

62.    Plaintiff has been damaged as a direct result due to the loss of life,

pain and suffering suffered by Curtis Bradford, as well as, the future loss of

economic and emotional support for his family, as more completely set forth

below.

63.    As a result of the negligence of the said Defendants Curtis Bradford

was murdered on or about August 19, 2013 by Nikko Jenkins.

WHEREFORE, Plaintiff, Velita Glasgow, Special Administrator for the

Estate of Curtis Bradford requests judgment against the above named

Defendants in an amount which will fairly and justly compensate the Estate for

the loss of society, financial support, love, services comfort and companionship.

The Plaintiff also seeks other elements of general damages together with the

20

costs of this action and such other and further relief, as the Court deems appropriate under the circumstances.

## EIGHTH CAUSE OF ACTION

64.     Plaintiff incorporates paragraphs 1-63 as though fully set forth herein.

65.     Prior to his death Curtis Bradford suffered conscious pain, suffering and fear of impending death as a result of the negligence of the above named Defendants.

WHEREFORE, Plaintiff requests judgment against the above named Defendants in an amount which will fairly and justly compensate the Estate for the conscious pain, suffering and fear of impending death suffered by Curtis Bradford as a result of the negligence of the above named Defendants together with the costs of this action and reasonable attorneys fees and such other and further relief as the Court deems just.

## NINTH CAUSE OF ACTION

66.     Plaintiff incorporates paragraphs 1-65 as though fully set forth herein.

67.     As a proximate result of the negligence of the above named Defendants the Plaintiff incurred healthcare expenses and funeral expenses the exact amount will be set forth with particularity upon completion of discovery.

21

WHEREFORE, Plaintiff prays for judgment against the above named

Defendants for all healthcare and funeral expenses, pain and suffering, general

damages, compensatory damages and  punitive damages together with the costs

of this action, including reasonable attorneys fees and such other and further

relief as the Court deems just and equitable.

DATED this 18th of August, 2014.

ESTATE OF CURTIS BRADFORD,
Velita Glasgow, Special Administrator
Plaintiff

BY:      _____

Judith A. Wells, #23090
Timothy L. Ashford, #19687
William Harris, #22996
LAW OFFICE OF JUDITH A. WELLS
1603 Farnam Street
Omaha, NE 68102
(402) 884 2777
ATTORNEYS FOR PLAINTIFF

22