IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEBRASKA

| | |
|---|---|
| VELITA GLASGOW, Special Administrator of the ESTATE OF CURTIS BRADFORD,<br><br>Plaintiff,<br><br>vs.<br><br>STATE OF NEBRASKA, DEPARTMENT OF CORRECTIONAL SERVICES; ROBERT HOUSTON, Retired Director, Department of Correctional Services, in his official and individual capacities; CAMERON WHITE, Behavioral Health Administrator for the Nebraska Department of Correctional Services, in his official and individual capacities; CORRECT CARE SOLUTIONS; and DR. RANDY KOHL in his official and individual capacities; CITY OF OMAHA, JOHN DOE 1-100, and COUNTY OF DOUGLAS, JOHN DOE 1-100,<br><br>Defendants. | Case No: 8:14cv244<br><br><br><br><br><br><br><br>PLAINTIFF'S BRIEF IN RESISTANCE TO ALL DEFENDANTS PENDING MOTIONS TO DISMISS |

### PRELIMINARY STATEMENT

Motions to dismiss by this cause of action, by all Defendants were filed on December 9, 2014, December 12, 2014 and December 16, 2014. Plaintiff asked for and was granted an extension of time to respond, Plaintiff now files her Brief in Resistance to all pending motions to dismiss.

1

I. The Defendants' Motions to Dismiss Plaintiff's First, Second, and Third Causes of Action within Plaintiff's Amended Complaint, which allege claims under 42 U.S.C.§1983, should be denied for the following reasons:

   a. **THE MOTIONS TO DISMISS SHOULD BE DENIED BECAUSE THE DEFENDANTS HAVE WAIVED ELEVENTH AMENDMENT SOVEREIGN IMMUNITY BY REMOVING THE STATE TORT CLAIMS TO FEDERAL COURT**

The State Defendants Motions to Dismiss should be denied because by removing the Plaintiff's state tort claims to this Court the State has waived its Eleventh Amendment immunity. It is well established that the Eleventh Amendment does not preclude a plaintiff from seeking damages under § 1983 from a state official if the official is sued in her individual capacity. *Egerdahl v. Hibbing Community College*, 72 F.3d 615, 619 (8th Cir. 1995). Moreover, State Defendants jointly and voluntarily removed Plaintiff's state tort claims, to this Court. State Defendants Motion to Dismiss Amended Complaint (hereinafter "Motion") p.9 ¶ 3.

The Eleventh Amendment provides that the "Judicial power of the United States shall not be construed to extend to any suit ... commenced or prosecuted against one of the ... States" by citizens of another State, U.S. Const., Amdt. 11, and (as interpreted) by its own citizens. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). However, in *Clark v. Barnard,* 108 U.S. 436, the general principle was established that a State's voluntary appearance in federal court amounts to a waiver of its Eleventh Amendment immunity, *Clark v. Barnard,* 108 U.S. 436, 447, 2 S.Ct. 878, 27 L.Ed. 780 (*See also College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd.,* 527 U.S. 666, 681, n. 3, 119 S.Ct. 2219, 144 L.Ed.2d 605.) Therefore, under <u>Clark</u>, State Defendants cannot voluntarily remove a case to federal court, and at the same time claim sovereign immunity.

This very issue was also addressed in *Lapides v. Board of Regents*, 535 U.S. 613, 122 S.Ct. 1640 (2002). In *Lapides*, all defendants joined in removing the case to Federal District Court where they sought dismissal. Those individuals whom Lapides had sued in their personal capacities argued that the doctrine of qualified immunity barred Lapides' federal law claims against them. The very question before the *Lapides* Court was whether a State waives that immunity when it removes a case from state court to federal court. In addressing the arguments of the defendants the Court in *Lapides* noted:

> It would seem anomalous or inconsistent for a State both (1) to invoke federal jurisdiction, thereby contending that the "Judicial power of the United States" extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the "Judicial power of the United States" extends to the case at hand. *Lapides*, 535 U.S. at 619.

The Court further reasoned that:

> . . . adopting respondents' position would permit States to achieve unfair tactical advantages, if not in this case, then in others, see *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 393–394, 118 S.Ct. 2047, 141 L.Ed.2d 364, the rationale for applying the general principle is as strong here as elsewhere. *Lapides*, 535 U.S. at 614.

The Court's reasoning in *Lapides* is equally applicable to Motions filed by State Defendants in the instant matter. It is inarguable that State Defendants have invoked the federal jurisdiction of this Court when they filed their Motions to Dismiss. It is equally inarguable that in doing so the State Defendants have conceded that the judicial power of the United States extends to this case. Under *Lapides*, the Defendants cannot invoke this Court's jurisdiction and simultaneously claim immunity from suit in federal court. The Motion to Dismiss should be denied because the Defendants have waived Eleventh Amendment immunity by their voluntary removal. *Lapides* is controlling.

b. **THE MOTION TO DISMISS SHOULD BE DENIED BECAUSE PLAINTIFF'S DUE PROCESS CLAIMS AGAINST THE STATE DEFENDANTS IN THEIR INDIVIDUAL CAPACITY PROPERLY STATE A COGNIZABLE CONSTITUTIONAL CLAIM FOR WHICH RELIEF CAN BE GRANTED**

State Defendants' Motion to Dismiss should be denied because Section 1983 authorizes an injured person to assert a claim for relief against a person who, acting under color of state law, violated the claimant's federally protected rights. The Supreme Court of the United States has identified two elements for a plaintiff's prima facie case in § 1983 litigation: The plaintiff must allege both (1) a deprivation of a federal right and (2) that the person who deprived the plaintiff of that right acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). In addition, if the plaintiff is seeking to establish municipal liability, he must show that the deprivation of his federal rights was attributable to the enforcement of a municipal custom or policy. *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985).

Furthermore, §1983 complaints are governed by the "notice pleading" standard established by the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 8(a) (hereinafter "FRCP") provides that the complaint must set forth (1) a short and plain statement of the grounds on which the court's jurisdiction depends, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks. Although Federal Rule of Civil Procedure 9 requires that certain issues be pled "with particularity" (e.g., fraud and mistake), it does not apply to § 1983 claims. It is the Plaintiff's position that in the instant matter State Defendants are seeking to impose a heightened standard of pleading, notwithstanding, FRCP (8)(a) only requires that plaintiffs filing §1983 claims meet a notice pleading standard.

4

Ostensibly, State Defendants interpret *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. at 1968–69, to impose some form of "heightened" pleading requirement. However, the Supreme Court rejected this view. *Id* at 1974. The Court continued by acknowledging that "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" and that it was not requiring "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*.

*Cognizable Constitutional Claim*

State Defendants' Motion to Dismiss should be denied because; State Defendants, by their actions regarding Nikko Jenkins, deprived Curtis Bradford of his rights to life and liberty under the Fourteenth Amendment. Plaintiff's Amended Complaint ¶¶ 38–47. Under *West*, Plaintiff has properly alleged deprivation of a constitutional right and properly alleged that the persons who deprived Curtis Bradford of this constitutional right, in this case State Defendants, acted under color of state law. Plaintiff's Amended Complaint also meets the plausibility test under *Bell Atlantic*.

To refute Plaintiff's allegations made in the Amended Complaint it is the Plaintiff's position that State Defendants have myopically interpreted and misguidedly relied on *Martinez v. California*, 44 U.S. 277, because the holding in Martinez does not squarely apply to facts of this case. The Court in Martinez held that no cognizable constitutional violation existed in the circumstances Plaintiff alleged. *Id*. The paramount portion of the Martinez decision, with regards to the instant matter, is what the Court did not address but undoubtedly left open. More specifically, the Court stated:

> **We need not and do not decide that a parole officer could never be deemed to**

> **"deprive" someone of life by action taken in connection with the release of a prisoner** on parole. But we do hold that at least under the particular circumstances of this parole decision, appellants' decedent's death is too remote a consequence of the parole officers' action to hold them responsible under the federal civil rights law. Martinez, 444 U.S. at 283.

The Martinez Court did not address the question of whether a state institution could ever be deemed to have "deprived" someone of life by its action taken in connection with the release of a prisoner. Which is precisely what Plaintiff alleges in the instant matter that State Defendants, by their actions regarding Nikko Jenkins, deprived Curtis Bradford of his constitutional right to life and liberty under the Fourteenth Amendment. Moreover, the Martinez decision is not a generally applicable decision; to the contrary it is very fact specific and was founded on facts very different than ones currently before this Court.

The issues in the instant matter are precisely the issues that Martinez did not address—which are, under what circumstances can a state institution be deemed to have deprived someone of life by its actions taken in connection with the release of a prisoner. Plaintiffs argue that the facts as plead in Plaintiffs Amended Complaint are precisely the set of circumstances in which a state institution should be deemed to have deprived a person of life and liberty by its actions, specifically its actions taken in connection with the release of Nikko Jenkins. The relevant facts in these regards are as follows:

1. Nikko Jenkins, while in custody, informed State Defendants that if and when he was released, he would kill people randomly;
2. Jenkins specifically requested for State Defendants to stop him from committing the crimes that he informed them he would commit by placing him at the Lincoln Regional Center for Mental Health Treatment;

3. State Defendants had actual knowledge that Jenkins had mental health issues prior to the time he was released.

4. State Defendants failure to deduct Jenkins good time credit due to his violent behavior while in custody resulted in a miscalculation of Jenkins available good time credit.

5. State Defendants did in fact release Jenkins based on the miscalculation of his good time.

6. Jenkins did in fact deprive Curtis Bradford of his life and liberty.

At this stage of the proceedings, all allegations in the Amended Complaint must be taken as true. Plaintiff has plead that Bradford had the constitutional right to life and liberty, and not to be deprived of those rights by State actions. As such, State Defendants' Motion to Dismiss should be denied because State Defendants, by their actions regarding Nikko Jenkins, deprived Curtis Bradford of his rights to life and liberty under the Fourteenth Amendment.

### c. THE MOTION TO DISMISS SHOULD BE DENIED BECAUSE QUALIFIED IMMUNITY IS NOT AN ABSOLUTE BAR TO CLAIMS MADE AGAINST STATE DEFENDANTS IN THEIR OFFICIAL CAPACITIES.

The State Defendants' Motion to Dismiss should be denied because qualified immunity is not an absolute bar to claims made against state defendants in their official capacity. The standard that controls the application of qualified immunity was set forth in *Plumhoff v. Rickard*, 134 S.Ct. 2012. In *Plumhoff* the Court explained:

> An official sued under § 1983 is entitled to qualified immunity **unless** it is shown that the official violated a statutory or constitutional right that was "'clearly established'" at the time of the challenged conduct. *Ashcroft v. al-Kidd,* 563 U.S. ___, ___, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011). And a defendant cannot be said to have violated a

7

clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it. *Id.,* at 2083-2084. In other words, "existing precedent must have placed the statutory or constitutional question" confronted by the official "beyond debate." *Plumhoff*, U.S. 134 S.Ct. at 2023.

Plaintiffs' Amended Complaint and Jury Demand are consistent with the standard set forth in *Plumhoff*. Based on the facts, as plead, State Defendants were well aware that while Nikko Jenkins was incarcerated he committed multiple punishable offenses in prison. Amended Complaint, Filing 5 (hereinafter "Compl.") ¶ 29. State Defendants also had actual knowledge of Jenkins psychotic and sociopathic behaviors. *Id.* Jenkins had also told State Defendants that if they released him that he would commit murders in the Omaha metropolitan area. Compl. ¶ 32. Notwithstanding the immediate foregoing facts, State Defendants still released Nikko Jenkins based on miscalculated and/or applied "good time." Id. But for the State Defendants releasing Nikko Jenkins when and under the circumstances they did, Curtis Bradford would still be alive today. Thus, Plaintiffs pleadings satisfy the Plumhoff test because it has been sufficiently plead that State Defendants violated Curtis Bradford's constitutional right to be free from deprivation of life and liberty at the hands of state action.

A very similar set of facts to the instant matter was present in *Steel v. State of New York*, #2002-016-500 (N.Y.C. Claims) (2002). In that case Michelle Brey was raped and murdered by an inmate who should not have been released from the New York State Prison system. Brey's Estate sued for wrongful death under the New York State Tort Act. The Court in Steel noted:

> *In Boland v State of New York*, 218 AD2d 235, 249, 638 NYS2d 500, 508 (3d Dept. 1996), the failure of an employee of the State's Central Registry for Child

Abuse and Maltreatment to transmit her report to the Child Protective Unit of Oneida County, rather than Ontario County, was held to be a ministerial act to which immunity does not attach.

Defendant here maintains that the poor design of a ministerial system is itself a discretionary act entitled to immunity, citing only *Southworth v State of New York*, 62 AD2d 731, 405 NYS2d 548 (1978), *aff'd* 47 NY2d 874, 419 NYS2d 71 (1979).**[7]** This theory places the defendant in the position of having to argue just how poorly things were set up:

- [T]he system was not structured to catch an error in communication between the courtroom clerk and the commitment order clerk . . . [There was] a flaw in this system . . ." [Def 5/9/2001 mem of law, p 6].

- "Efforts by claimant to paint the mistaken commitment order as a typist's error, must fail. Plainly, this error was a systemic problem." [*Id.*, p 21]

- "Due to the flawed system for processing commitment orders, many problems existed." [*Id.*, p 22].

To accept defendant's theory that a straightforward transmittal function was established pursuant to some reasoned judgment, and thus beyond the realm of the ministerial, is at odds with the *Tango* decision, which focuses on whether a compulsory result obtains.

The reasoning in *Steel* is equally applicable to the facts in the instant matter. State Defendants allege that Jenkins release was lawful and mandatory (Motion. p.16 ¶1.) all the while ignoring the facts as plead by Plaintiff. Specifically that Jenkins was in the process of being civilly committed in Johnson County when the state decided to remove him from that jurisdiction, thereby precluding the County Attorney from the opportunity to intervene. Once Jenkins was determined to be insane, it was mandatory on State Defendants to follow through with those

proceedings. Once relocated, Jenkins was released early based on a miscalculation of his good time credit, a ministerial function. Ministerial errors are not protected by qualified immunity. *Steel*, #2002-016-500 p.8. State Defendants' Motion to Dismiss should be denied because the miscalculation of Jenkins "good time" credit was ministerial in nature, and as such, State Defendants cannot avail themselves of qualified immunity.

II. The Defendants' Motions to Dismiss Plaintiff's Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth Causes of Action in Plaintiff's Amended Complaint, which allege state law negligence claims under the State Tort Claims Act, Neb. Rev. Stat. §§ 81-8, 209 *et seq*, should all be denied for the following reasons:

   a. **THE MOTION TO DISMISS SHOULD BE DENIED BECAUSE FAILURE TO COMPLY WITH THE FINAL DISPOSITION REQUIREMENT OF THE STATE TORT CLAIMS ACT DOES NOT DEPRIVE THIS COURT OF GENERAL SUBJECT MATTER JURISDICTION**

The final disposition requirement in the State Tort Claims Act, like the requirement of the initial filing of a claim, is simply a statutory procedural requirement enacted to benefit the State entity being sued by allowing it an opportunity to adequately examine and investigate the claim prior to commencement of a lawsuit. Thus, although filing a lawsuit prior to final disposition of the claim by the claims board violates the statutory requirement, it does not deprive the district court of its general subject matter jurisdiction to hear the case. *Millman v. County of Butler*, 235 Neb. 915, 458 N.W.2d 207 (1990). Curtis Bradford has a constitutional right to be free from the deprivation of life and liberty at the hands of the state.

In *Weinberger v. Salfi*, the Court distinguished between provisions that merely codify the requirement that administrative remedies must be exhausted and those that impose jurisdictional requirements. *Weinberger v. Salfi*, 422 U.S. 749, 757, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). The

latter must contain "sweeping and direct" statutory language indicating that there is no federal jurisdiction prior to exhaustion, or the exhaustion requirement is treated as an element of the underlying claim. *See id.; Wright v. Morris,* 111 F.3d 414, 420–21 (6th Cir.1997) (applying *Salfi* to section 1997e(a)). An administrative exhaustion requirement is jurisdictional only if it goes beyond the language necessary to codify an exhaustion requirement. *See Wright,* 111 F.3d at 420–21.

The State Defendants' Motion to Dismiss should be denied because under The Nebraska State Torts Act the Final Disposition clause does not go beyond the language necessary to codify an exhaustion remedy. The final provision clause of the Act reads as follows:

> No suit shall be permitted under the State Tort Claims Act unless the Risk Manager or State Claims Board **has made final disposition** of the claim, except that if the Risk Manager or board does not make final disposition of a claim within six months after the claim is made in writing and filed with the Risk Manager in the manner prescribed by the board, the claimant may, by notice in writing, withdraw the claim from consideration of the Risk Manager or board and begin suit under such act. Neb.Rev.St. § 81-8,213.

Because there is no "sweeping and direct" statutory language indicating that there is no federal jurisdiction prior to exhaustion, or that the exhaustion requirement is treated as an element of the underlying claim it cannot be said that, Plaintiff, by withdrawing the action from the Claims Board has in anyway stripped this Court of jurisdiction.

Moreover, State Defendants' Motions to Dismiss should be denied because by removing the case to federal Court State Defendants invokes the jurisdiction of this Court. State Defendants jointly and voluntarily removed Plaintiff's state tort claims, to this Court. State Defendants' Motion to Dismiss Amended Complaint (hereinafter "Motion") p.9 ¶ 3. It is inarguable that State Defendants have invoked the federal jurisdiction of this Court when they

11

filed their Motions to Dismiss. It is equally inarguable that in doing so the State Defendants have conceded that the judicial power of the United States extends to this case. State Defendants' Motion to Dismiss should be denied.

### b. THE MOTION TO DISMISS SHOULD BE DENIED BECAUSE STATE DEFENDANTS CAN STILL BE FOUND LIABLE IN THEIR INDIVIDUAL CAPACITY FOR DISCRETIONARY FUNCTIONS THAT OCCUR WITHIN THE COURSE AND SCOPE OF THEIR EMPLOYMENT

The Supreme Court held in *Monroe v. Pape*, that Congress enacted § 1983 " 'to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it.' " *Scheuer v. Rhodes,* 416 U.S. 232, 243, 94 S.Ct. 1683, 1689, 40 L.Ed.2d 90 (1974) (quoting *Monroe v. Pape, supra,* 365 U.S., at 171–172, 81 S.Ct., at 475–476). Moreover, the Court has stated that immunity from suit under § 1983 is "predicated upon a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it," *Imbler v. Pachtman,* 424 U.S. 409, 421, 96 S.Ct. 984, 990, 47 L.Ed.2d 128 (1976), and officials seeking absolute immunity must show that such immunity is justified for the governmental function at issue, *Burns v. Reed,* 500 U.S. 478, 486–487, 111 S.Ct. 1934, 1934, 114 L.Ed.2d 547 (1991).

The Supreme Court has also refused to extend absolute immunity beyond a very limited class of officials (including the President of the United States, legislators carrying out their legislative functions, and judges carrying out their judicial functions, "whose special functions or constitutional status requires complete protection from suit.") *Harlow v. Fitzgerald,* 457 U.S. 800, 807, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982). Furthermore, state executive officials are not entitled to absolute immunity for their official actions. *Scheuer v. Rhodes, supra.*

12

The Court in *Hafer* articulated the rule. *Hafer v. Melo*, 112 S.Ct. 358. In Hafer, Discharged commonwealth employees brought actions against Pennsylvania Auditor General, asserting civil rights and state law tort claims. The United States District Court for the Eastern District of Pennsylvania, dismissed § 1983 claims, and discharged employees appealed. The Court of Appeals for the Third Circuit, 912 F.2d 628, reversed, and certiorari was granted. The Supreme Court, held that: (1) state officers may be personally liable for damages under § 1983 based upon actions taken in their official capacities; (2) officers' potential liability is not limited to acts under color of state law that are outside their authority or not essential to operation of state government, but also extends to acts within their authority and necessary to performance of governmental functions; and (3) Eleventh Amendment does not erect barrier against suits to impose individual and personal liability on state officers under § 1983.

The State Defendants' Motion to Dismiss should be denied because under § 1983 a state official's potential liability is not limited to acts under color of state law that are outside their authority or not essential to operation of state government, but also extends to acts within their authority and necessary to performance of governmental functions. *Hafer*, 112 S.Ct. 364.

    c. **DEFENDANTS MAY BE SUED IN THEIR OFFICAL CAPACITIES UNDER SETION 1983. TO RAISE AN AFFIRMATIVE DEFENSE DEFENDANTS MUST FILE AN ANSWER**

Defendants assert that the various individuals and/or offices are immune from suit in their official capacity. However, using the plain interpretation of the Federal Rules of Civil Procedure, these motions must be dismissed. Qualified immunity is an affirmative defense. FRCP (c) requires that affirmative defenses be raised in an answer.

In *Gomez v. Toledo, 446 U.S. 635, 639-640 (1980),* the Supreme Court held that it was reluctant to legislate pleading requirements, and that it would not alter the Federal Rules of Civil Procedure in this type of claim. It stated as follows:

> By the plain terms of §1983, two—and only two—allegations are required in order to state a cause of action under that statute. First,

13

> the Plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law. See *Monroe v. Pape*, 365 U.S. 167, 171, 81 S.Ct 473, 475, 5 L.Ed 2d 492 (1961). Petitioner has made both Of the required allegations, He has alleged that his discharge by respondent violated his right to procedural due process, see *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct 2701, 33 L.Ed, 2d 548 (1972), and that respondent acted under color of Puerto Rican law. See *Monroe v. Pape*, supra, at 172-187, 81 S.Ct., at 476-484.
>
> Moreover, this Court has never indicated that qualified immunity is relevant to the existence of the plaintiff's cause of action; instead we have described it as a defense available to the official in question. See *Procunier v. Navarette*, supra, 434 U.S., at 562, 98 S.Ct., at 859; *Pierson v. Ray*, supra, 386 U.S., 556, 557, 87 S.Ct., at 1219; *Butz v. Economics*, 438 U.S. 478, 508, 98 S.Ct. 2894, 2911, 57 L.Ed. 2d 895 (1978). <u>Since Qualified immunity is a defense, the burden of pleading it rests with the Defendant.</u> See Fed.Rule Civ. Proc. 8(c) (defendant must please any "matter Constituting an avoidance or affirmative defense").

446 U.S. at 640 (emphasis added).

The beginnings of the state-created danger doctrine date back to the Supreme Court case of *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189 (1989).

"To establish a claim based on the state-created danger doctrine, a plaintiff must satisfy the following elements: (1) the harm caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) some relationship existed between the state and the plaintiff that renders plaintiff a foreseeable victim; and (4) "a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all."

To make out a proper danger creation claim, a plaintiff must demonstrate that:

(1) the charged state entity and the charged individual actors created the danger or increased plaintiff's vulnerability to the danger in some way;

(2) plaintiff was a member of a limited and specifically definable group;

(3) defendants' conduct put plaintiff at substantial risk of serious, immediate, and proximate harm;

14

(4) the risk was obvious or known;

(5) defendant acted recklessly in conscious disregard of that risk; and

(6) such conduct, when viewed in total, is conscience shocking.

All of the elements listed above apply to the case at hand; and as it is the duty of the named Defendants to protect citizens of this state; especially when they created the danger by releasing Nikko Jenkins and ignoring his pleas for mental health treatment.

### d. DOUGLAS COUNTY AND CITY OF OMAHA ARGUE THEY DO NOT MAINTAIN CARE, CUSTODY OR CONTROL OVER INMATES IN STATE INCARCERTION

Defendants Douglas County and the City of Omaha argue they do not maintain care, custody or control over inmates in state incarceration. However, Plaintiff does not allege this in her complaint; but rather that Defendants Douglas County and City of Omaha were aware and had knowledge of the criminal activities and the criminal propensity of Nikko Jenkins prior to his killing Curtis Bradford and they failed to act on this knowledge.

One example of this knowledge; Nikko Jenkins wrote to a Douglas County District Court Judge pleading for mental health treatment, however, no action was taken.

### CONCLUSION AND PRAYER FOR RELIEF

Plaintiffs have established that State Defendants' Motion to Dismiss must be denied in its entirety. It fails to produce plausible reasons for why Curtis Bradford's family should not be allowed to have their day in Court. Plaintiff's state law claims are not barred by sovereign immunity notwithstanding STCA statutory requirements. Additionally, plaintiff's § 1983 claims properly state a claim for which relief can be granted.

Based upon the facts and authorities set forth above, Plaintiff contends all pending Motions to Dismiss must be denied. In the alternative, Plaintiff asks for leave to amend the

15


Complaint in order to correct any perceived deficiency and/or possibly and delete a party based upon facts that have become known after the Amended Complaint was filed in this case.

VELITA GLASGOW, Special Administrator
The ESTATE of CURTIS BRADFORD,

BY: /s/Judith A. Wells
JUDITH A. WELLS, #23090
1603 Farnam Street
Omaha, NE 68102
(402) 884 2777
(402) 344 7798 facsimile
Jawells50@aol.com

/s/ Timothy Ashford
TIMOTHY ASHFORD, #19687
1603 Farnam Street
Omaha, NE 68102
(402) 342 8888
Tash173846@aol.com

/s/ William Harris
William Harris, #22996
9205 Meadow Drive
Omaha, NE 68134
(402) 208 4336
Harrisx5@cox.net

### CERTIFICATE OF SERVICE

I hereby certify on January 23, 2015, I electronically filed the foregoing document with the Clerk of the United States District Court for the District of Nebraska, using the CM/ECF system, causing notice of such filing to be served upon all parties' counsel of record.

/s/Judith A. Wells