IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| VELITA GLASGOW, Special Administrator of the Estate of Curtis Bradford, | ) ) ) ) | |
| Plaintiff, | ) ) | 8:14CV244 |
| v. | ) ) | |
| STATE OF NEBRASKA; DEPARTMENT OF CORRECTIONAL SERVICES; ROBERT HOUSTON, Retired Director, Department of Correctional Services, in his official and individual capacities; DR. CAMERON WHITE, Behavioral Health Administrator for the Department of Correctional Services, in his official and individual capacities; CORRECT CARE SOLUTIONS; DR. RANDY KOHL, in his official and individual capacities, CITY OF OMAHA, JOHN DOE 1-100, and COUNTY OF DOUGLAS, JOHN DOE 1-100, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | MEMORANDUM OPINION |
| Defendants. | ) ) | |

This matter is before the Court on four related motions to dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6).  The four movants are Correct Care Solutions ("CCS") (Filing No. 8), Douglas County and its 100 John Doe defendants ("County Defendants") (Filing No. 10), the City of Omaha and its 100 John Doe defendants ("City Defendants")

(Filing No. 13), and defendants Robert Houston, Randy Kohl, Cameron White, and the State of Nebraska, Department of Corrections (collectively, the "State Defendants") (Filing No. 17). The matter has been fully briefed and is ready for disposition. After review of the motions, briefs, indices of evidence, and relevant case law, the Court finds as follows.

I.   BACKGROUND

Plaintiff Velita Glasgow ("Glasgow") is the mother of Curtis Bradford ("Bradford"). Bradford was a victim of serial killer, Nikko Jenkins ("Jenkins"). Bradford and Jenkins were acquaintances in prison. Upon Jenkins' release, they reconnected and Bradford was killed. Jenkins entered a plea of nolo contendere in state court and was found guilty of the murder of Bradford, in addition to the murders of Jorge Cajiga-Ruiz, Juan Uribe-Pena, and Andrea Kruger.

Glasgow, as special administrator of her son's estate, brought the instant action for various negligence claims and violations of her son's constitutional rights under Title 42, Sections 1983 and 1988(a) in federal court.[1] Glasgow has amended

---

[1] The plaintiff also filed an identical action in state court which was removed to federal court and subsequently dismissed on the basis of redundancy. *See* Case No. 8:14CV394.

-2-

her complaint (Filing No. 5).  All defendants moved for dismissal.

In her amended complaint, Glasgow brings Nine Causes of Action against the defendants in their official and individual capacities.  In the First Cause of Action, Glasgow claims that actions and inactions of the defendants deprived Bradford of his life and liberty without due process of law (Filing No. 5, at 11-13).  In the Second Cause of Action, Glasgow states that she seeks punitive damages, compensatory damages, and attorneys' fees for Bradford's fear and conscious pain of impending death (*Id.* at 14).  In the Third Cause of Action, Glasgow seeks compensation for Bradford's health care  and funeral expenses (*Id.* at 14-15).

In the Fourth Cause of Action, Glasgow seeks damages from the State Defendants for their negligence in allowing Jenkins' release when they knew that Jenkins may harm "the public" (*Id.* at 15-16).  Like the Second Cause of Action, the Fifth Cause of Action seeks compensatory damages and attorneys' fees for Bradford's fear and conscious pain of impending death (*Id.* at 16-17).  The differences between the Causes of Actions are that the Second asks for punitive damages and the Fifth does not seek punitive damages, and the Second focuses on all defendants while the Fifth focuses solely on the State Defendants (*Compare* Filing No. 5, at 14 (Second Cause of Action), *with*

-3-

Filing No. 5, at 16-17 (Fifth Cause of Action)).  Similarly, the
Sixth Cause of Action seeks compensation for Bradford's health
care and funeral expenses from the State Defendants (*Id.* at 17;
*Compare* Filing No. 5, at 14 (Third Cause of Action), *with* Filing
No. 5, at 17 (Sixth Cause of Action)).

In the Seventh Cause of Action, Glasgow claims that the
defendants violated their medical care obligations to Jenkins.
According to Glasgow, the citizens of Nebraska, including
Bradford, have a right to assert inmates' rights.  Glasgow seeks
compensatory damages and attorneys' fees (Filing No. 5, 18-19).
The Eighth Cause of Action echos the same claims for damages as
the Fifth and the Second Causes of Action.  (*Id.* at 19-20; Filing
No. 5, at 14 (Second Cause of Action), *and* Filing No. 5, at 16-17
(Fifth Cause of Action), *with* Filing No. 5, at 19-20 (Eighth
Cause of Action)).  The Ninth and final Cause of Action is
another request for health care and funeral expenses (Filing No.
5, at 20; *Compare* Filing No. 5, at 14 (Third Cause of Action),
*and* Filing No. 5, at 17 (Sixth Cause of Action), *with* Filing No.
5, at 20 (Ninth Cause of Action)).

The Court will analyze these Causes of Action in four
parts:  § 1983 actions (First, Second, and Third Causes of
Action), the negligence claims against State Defendants and CCS
(Fourth, Fifth, and Sixth Causes of Action), the defendants'

-4-

violation of Jenkins' rights (Seventh, Eighth, and Ninth Causes
of Action), and the motions to dismiss from the City, County, and
CCS (All Causes of Action).

II.  LEGAL STANDARDS

        The Court has an obligation to consider *sua sponte*
whether it has subject matter jurisdiction over a case. *Thomas
v. United Steelworkers Local 1938*, 743 F.3d 1134, 1139 (8th Cir.
2014).  The Court "must raise jurisdictional issues 'when there
is an indication that jurisdiction is lacking, even if the
parties concede the issue.'" *Id.* (quoting *Thomas v. Basham*, 931
F.2d 521, 523 (8th Cir. 1991)).  Suits are subject to dismissal
when the court lacks subject matter jurisdiction to hear the
matter.  Fed. R. Civ. P. 12(b)(1).  The party asserting
jurisdiction bears the burden of proving that jurisdiction is
proper. *Great Rivers Habitat Alliance v. FEMA*, 615 F.3d 985, 988
(8th Cir. 2010).

        To survive a motion to dismiss pursuant to Federal Rule
of Civil Procedure 12(b)(6), the plaintiff must allege "enough
facts to state a claim to relief that is plausible on its face."
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
Determining whether a complaint states a plausible claim for
relief is "a context-specific task" that requires the court "to
draw on its judicial experience and common sense." *Id.* at 556.

-5-

Under *Twombly*, a court considering a motion to dismiss may begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). Although legal conclusions "can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Accordingly, the Supreme Court has prescribed a "two-pronged approach" for evaluating Rule 12(b)(6) challenges. *Id.* First, a court should divide the allegations between factual and legal allegations; factual allegations should be accepted as true, but legal allegations should be disregarded. *Id.* Second, the factual allegations must be examined for facial plausibility. *Id.*

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 677-78 (stating that the plausibility standard does not require a probability, but asks for more than a mere possibility that a defendant has acted unlawfully). A court must find "enough factual matter (taken as true) to suggest" that "discovery will reveal evidence" of the elements of the claim. *Twombly*, 550 U.S. at 558, 556. When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, the complaint should be dismissed for

-6-

failure to state a claim under Federal Rule of Civil Procedure
12(b)(6).  *Id.* at 558; *Iqbal*, 556 U.S. at 679.

III. DISCUSSION

A.   FIRST THEORY: § 1983 ACTIONS

        As a preliminary matter, the plaintiff believes the
defendants have waived their Sovereign Immunity defense and that
the Court should therefore deny the defendants' motion to dismiss
the First, Second, and Third Causes of Action against Nebraska
and its employees for lack of subject matter jurisdiction
pursuant to the Eleventh Amendment to the United States
Constitution and the doctrine of Sovereign Immunity.  Filing No.
25, at 2-3.  This action was never in state court and was not
removed.  *See generally* Filing No. 1.  Therefore, the holding of
*Lapides v. Board of Regents*, 535 U.S. 613 (2002) is not relevant
in this case.

1.   NEBRASKA AND THE OFFICIAL CAPACITIES OF HOUSTON, WHITE, AND
     KOHL

        Pursuant to 42 U.S.C. § 1983, Glasgow asserts three
claims against the State Defendants in their official capacities,
for violating Bradford's Fourteenth Amendment rights.  "[A] State
is not a 'person' against whom a § 1983 claim for money damages
might be asserted."  *Lapides v. Bd. of Regents*, 535 U.S. 613, 617
(2002) (citing *Will v. Mich. Dept. of State Police*, 491 U.S. 58,

66 (1989)).  Also, "[a] suit against a State employee in his or her official capacity is, in reality, a claim against the State itself." *Will*, 491 U.S. at 71.  Because Glasgow seeks monetary damages against Nebraska and its employees, Nebraska's motion to dismiss plaintiff's First, Second, and Third claims against Nebraska and the official capacities of Houston, White, and Kohl will be granted pursuant to the doctrine of Sovereign Immunity.

2.   THE INDIVIDUAL CAPACITIES OF HOUSTON, WHITE, AND KOHL

       Glasgow also asserts these three § 1983 claims against Nebraska employees, in their individual capacities, for violating Bradford's Constitutional rights.  The State defendants claim the Court should dismiss the claims because these claims offer no cognizable Constitutional claim, that the "State-created-danger doctrine" does not apply in this case, and the doctrine of qualified immunity shields the defendants from liability.  Filing No. 18, at 14-21.

       "The first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws' of the United States." *Martinez v. California*, 444 U.S. 277 (1980) (citing *Baker v. McCollan*, 443 U.S. 137 (1979)).  Glasgow claims Nebraska and its employees encouraged the denial of, and denied, Bradford's right to life and liberty without due process by setting into motion the

-8-

release of Jenkins which led to Bradford's murder.  Filing No. 4, at 11-13.

Glasgow has failed to plead that Bradford was deprived of a right secured by the Constitution and laws of the United States.  The defendants did not contravene Bradford's right to life or liberty without due process of law.  This argument, in the context of this case and these facts, has well established law contrary to Glasgow's arguments.

The United States Supreme Court offers one such example in *Martinez v. California*.  In *Martinez*, the State of California released a parolee who killed a girl five months after his release from jail.  *Martinez*, 444 U.S. at 279.  Survivors of the girl brought a § 1983 action against the state.  The Court ultimately held:

> Her life was taken by the parolee
> five months after his release.  He
> was in no sense an agent of the
> parole board.  Further, the parole
> board was not aware that
> appellants' decedent, as
> distinguished from the public at
> large, faced any special danger.
> We need not and do not decide that
> a parole officer could never be
> deemed to "deprive" someone of life
> by action taken in connection with
> the release of a prisoner on
> parole.  But we do hold that at
> least under the particular
> circumstances of this parole
> decision, appellants' decedent's

-9-

> death is too remote a consequence
> of the parole officers' action to
> hold them responsible under the
> federal civil rights law.  Although
> a § 1983 claim has been described
> as "a species of tort liability,"
> it is perfectly clear that not
> every injury in which a state
> official has played some part is
> actionable under that statute.

*Id.* at 285 (internal citations omitted).

Glasgow considers this reading of *Martinez* "myopic" and then highlights one line of that opinion:  "We need not and do not decide that a parole officer could never be deemed to 'deprive' someone of life by action taken in connection with the release of a prisoner on parole."  *Id.*

Subsequent opinions have broadened the *Martinez* opinion from a mere footnote.  In *Martinez*, the Court relied upon the five-month time frame in making its findings, and the Court refused to rule on whether a parole officer could ever be "deemed to 'deprive' someone of life by action taken in connection with the release of a prisoner on parole."  *Id.*  However, in the wake of *Martinez*, several Circuit Courts have declined to impute liability under § 1983 to the individuals who released inmates for the actions of those released from state incarceration within shorter intervals.  *Lovins v. Lee*, 53 F.3d 1208 (11th Cir. 1995)*; Davis v. Fulton County*, 90 F.3d 1346 (8th Cir. 1996); *Fox v.*

-10-

*Custis*, 712 F.2d 84 (4th Cir. 1983); *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982).

Nine years afer the *Martinez* decision, the Supreme Court delivered its opinion in *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189 (1989). Therein, the Supreme Court established the special relationship doctrine to determine whether the Fourteenth Amendment requires a state to protect its citizens from invasion by private citizens. *Id.* at 195-96. The Court held that there are certain limited circumstances in which "the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." *Id.* at 198. "The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help, but from the limitation which it has imposed on [one's] freedom to act on [one's] own behalf." *Id.* at 198 (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1995)). Without these special circumstances, a § 1983 action must fail. *See id.* at 197. In no event could discovery uncover evidence that Bradford was in the special circumstances articulated in *DeShaney* and the plaintiff was unable to argue to the contrary. *See* Filing No. 25 at 14-15. To the extent that Glasgow argues that a special relationship existed between Bradford and the Nebraska defendants, those arguments will be addressed below.

-11-

Due Process can also require the state to protect individuals when the state created the danger to which the individuals are subjected. *Fields v. Abbott*, 652 F.3d 886, 890 (8th Cir. 2011), *Estate of Johnson v. Weber*, No. CIV 12-4084, 2014 WL 2002882, at *5 (D.S.D. May 15, 2014).  To succeed on the state-created danger theory of substantive due process, Glasgow must prove the following:

> (1) that [Bradford] was a member of a limited, precisely definable group, (2) that the defendants' conduct put [him] at a significant risk of serious, immediate, and proximate harm, (3) that the risk was obvious or known to the defendants, (4) that the defendants acted recklessly in conscious disregard of the risk, and (5) that in total, the defendants' conduct shocks the conscience.

*Fields*, 652 F.3d at 891, *Johnson*, No. CIV 12-4084, 2014 WL 2002882, at *6.  Bradford was not a member of a limited, precisely definable group.  In her § 1983 actions, Glasgow avoids referring to Bradford as a member of the public, but in the Fourth Cause of Action, she referred to him as a member of the public.  Filing No. 5, at 15-16.  Membership in the general public is not tantamount to membership in a limited, precisely definable group.  Glasgow has failed to establish that Bradford

was a member of a limited, precisely definable group because the
general public is not such a group.

Therefore, Glasgow fails to articulate a cognizable
Constitutional claim, the special relationship doctrine does not
apply to this case, and the "State-created-danger doctrine" also
does not apply in this case.  The Court need not turn to the
issue of qualified immunity.  For the foregoing reasons,
Glasgow's First, Second, and Third claims against Houston, White,
and Kohl in their individual capacities will be dismissed.
*Martinez*, 444 U.S. at 285, *DeShaney*, 489 U.S. 189 (1989)*, Davis
v. Fulton County*, 90 F.3d 1346 (8th Cir. 1996), *Fields v. Abbott*,
652 F.3d 886, 890 (8th Cir. 2011); *see also Lovins v. Lee*, 53
F.3d 1208 (11th Cir. 1995)*; Fox v. Custis*, 712 F.2d 84 (4th Cir.
1983); *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982),
*Estate of Johnson v. Weber*, No. CIV 12-4084, 2014 WL 2002882, at
*5 (D.S.D.  May 15, 2014).

B.   SECOND THEORY:  NEGLIGENCE CLAIMS AGAINST STATE DEFENDANTS

1.   STATE TORT CLAIM ACT

The issue before the Court is whether it has
jurisdiction over Glasgow's remaining tort claims against
Houston, White, and Kohl, in their official capacities, when
Glasgow prematurely removed her tort claim from the State of
Nebraska Risk Manager ("NRM") approximately three months before

-13-

meeting the requisite statutory period.  Nebraska courts only
have jurisdiction in official-capacity tort claims if the
plaintiff files the claim with the NRM and the claim remains in
the NRM for no less than six months, or if the NRM makes a
disposition.  Neb. Rev. Stat. § 81-8,213, *Geddes v. York County*,
273 Neb. 271, 729 N.W.2d 661 (2007) (finding the district court
did not err in granting summary judgment for the defendant when
plaintiff prematurely withdrew her tort claim from NRM and filed
suit just one day before expiration of six month period).
Glasgow removed her NRM claim, filed suit only three months after
filing her claim with the NRM, and the NRM never disposed of the
matter.  *See* Filing No. 19-2 (NRM claim form dated May 21, 2014),
Filing No. 1 (filed August 18, 2014).  Therefore, Glasgow has
failed to comply with the statute.  The State Defendants' motion
to dismiss the Fourth through the Ninth Causes of Action against
Houston, White, and Kohl, in their official capacities will be
granted.  Consequently, all claims against Houston, White, and
Kohl, in their official capacities will be dismissed.

2.   DISCRETIONARY FUNCTION

        Alternatively, the State defendants move to dismiss
Glasgow's Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth Causes
of Action against Houston, White, and Kohl in their official
capacities pursuant to the Discretionary Function Exception.  The

-14-

State Tort Claims Act governs state law tort claims brought
against State officials acting within the course and scope of
their employment. *See Doe v. Bd. of Regents*, 280 Neb. 492, 512
788 N.W.2d 264, 282 (2010); Neb. Rev. Stat. § 81-8,209.  This
statute provides a limited waiver of Nebraska's Sovereign
Immunity for many tort claims, but it also lists exceptions to
that waiver.  *Id.*; Neb. Rev. Stat. § 81-8,219.  A defendant may
affirmatively plead that the plaintiff has failed to state a
cause of action because an exception to the waiver of Sovereign
Immunity applies.  *Id.* at 513.

        Among the Tort Claim Act's exceptions is the
"discretionary function exception," which reads as follows:

> The State Tort Claims Act shall not
> apply to . . . [a]ny claim based
> upon an act or omission of an
> employee of the state, exercising
> due care, in the execution of a
> statute, rule, or regulation . . .
> based upon the exercise or
> performance or the failure to
> exercise or perform a discretionary
> function or duty on the part of a
> state agency or an employee of the
> state, whether or not the
> discretion is abused.

Neb. Rev. Stat. § 81-8,219(1).  Therefore, any state employee's
action or inaction in a discretionary function cannot be the
basis for liability under the Act because Nebraska preserves its
Sovereign Immunity under this doctrine.  *Jasa By and Through Jasa*

-15-

*v. Douglas County*, 244 Neb. 944, 955, 510 N.W.2d 281, 288 (1994) (quoting *Wickersham v. State*, 218 Neb. 175, 180, 354 N.W.2d 134, 138-39 (1984)).  A discretionary function exception is when a governmental executive or administrator has discretion to act according to one's judgment of the best course to be taken.  *See id.*

The State defendants state that Glasgow failed to allege in her Amended Complaint that the State defendants had no discretion (1) in failing to grant or withhold Jenkins' good time credits, or (2) in declining to pursue a civil commitment of Jenkins.  Filing No. 18, at 30-31.  Because Glasgow did not plead that the State defendants lacked discretion in these two matters, the defendants argue, the discretionary function exception requires dismissal.

a.   "GOOD TIME"

Insofar as Glasgow alleges negligence in the defendants' calculation of Jenkins' good time, the Court finds the discretionary function exception shields the defendants from liability.  The Nebraska "good time law" reads as follows:

> While the offender is in the custody of the department, reductions of terms granted pursuant to subdivision (2)(a) of this section **may** be forfeited, withheld, and restored by the chief executive officer of the facility

-16-

> with the approval of the director
> after the offender has been
> notified regarding the charges of
> misconduct.

Neb. Rev. Stat. § 83-1,107(3).  In *Jasa By and Through Jasa,* the
Nebraska Supreme Court interpreted the word "may" in a Nebraska
statute to mean that a government agency "had the power to make
bacterial meningitis a reportable disease."  *Jasa By and Through
Jasa*, 244 Neb. at 962, 510 N.W.2d 281, 291 (construing Neb. Rev.
Stat. § 71-503.01).  The Court ultimately ruled that this
language made the statutes discretionary and therefore the
discretionary function exception shielded Douglas County under
the Tort Claim Act.  *Id.* at 292, 510 N.W.2d at 963.

It is obvious from the language of Nebraska Revised
Statute Section 83-1,107(3) that the forfeiture, withholding, and
restoration of "good time credits" are within the purview and
shared discretion of the chief executive officer of the facility
with the approval of the director.  No argument can overcome the
clear and plain meaning of this statute, and the Court finds that
the language of the statute is discretionary.  Therefore, the
State defendants' motion to dismiss all claims against them in
their official capacity based upon a violation or negligent
application of the good-time credit statute will be granted.

b.   CIVIL COMMITMENT

Glasgow also claims to have been injured by the failure of the State defendants to follow state mandated civil commitment procedures for Jenkins.  State defendants seek to dismiss this allegation against the defendants in their official capacity. The statute in question reads as follows:

> Any person who believes that another person is mentally ill and dangerous **may** communicate such belief to the county attorney . . . . **If the county attorney concurs that such person is mentally ill and dangerous** and that neither voluntary hospitalization nor other treatment alternatives less restrictive of the subject's liberty than inpatient or outpatient treatment ordered by a mental health board is available or would suffice to prevent the harm described in section 71-908, he or she shall file a petition as provided in this section.

Neb. Rev. Stat. § 71-921(1).  For the same reasons stated above, the Court construes the meaning of the word "may" as used here to be discretionary.  In addition, the county attorney's duty to concur with such reports is discretionary because the statute conditions the county attorney's power upon his concurrence. Therefore, the defendants' motion to dismiss Glasgow's claims against the State defendants in their official capacity insofar

-18-

as they plead allegations which fall within the Discretionary
Function Exception will be granted.

3.   INDIVIDUAL CAPACITY

        The State defendants move to dismiss Glasgow's Fourth,
Fifth, Sixth, Seventh, Eighth, and Ninth Causes of Action for
various reasons.  First, the defendants maintain that, because
Glasgow alleges that Houston, White, and Kohl acted within the
scope and course of their employment with the State of Nebraska,
Glasgow's sole recourse is to file claims against them in their
official capacities.  Filing No. 18, at 27 (citing *Young v.
Douglas County*, No. 8:07CV265, 2009WL2568061, at *1 (D. Neb. Aug.
19, 2009)).  Pursuant to the Nebraska Supreme Court case, *Bohl v.
Buffalo County*, the Court will analyze whether Glasgow may assert
claims against the remaining defendants in their individual
capacities.  The issue is whether the defendants acted solely
within their capacities as employees of the State of Nebraska.
If the defendants "did not act within the scope of [their]
employment," Glasgow may pursue her claim against them in their
individual capacities; however if it is determined that the
defendants "did act within the scope of [their] employment,"
Glasgow would have had to comply with the requisites set out in
the State Tort Claims Act.  Filing No. 18, at 27-28 (citing
*Young*, No. 8:07CV265, 2009WL2568061, at *6; *Big Crow v. City of*

*Rushville*, 266 Neb. 750, 755, 669 N.W.2d 63, 67 (Neb. 2003)); *See also* No. 8:07CV265, Filing No. 216, at 48 (quoting *Bohl v. Buffalo County*, 251 Neb. 492, 500, 557 N.W.2d 668, 674 (1997)). Glasgow disputes the conclusion that the defendants acted solely within the scope of their employment.  Filing No. 25, at 12-13. Glasgow cites to § 1983 precedent in the Eastern District of Pennsylvania to argue that Congress intended § 1983 actions to reach both individual and official capacities.  This argument is without merit.  The Court is analyzing Nebraska tort claims made under Nebraska law -- not § 1983 actions.  Under Nebraska law, the defendants' motion to dismiss all remaining Causes of Action against Houston, White, and Kohl, in their individual capacities will be granted.  All claims against Houston, White, and Kohl, in their individual and official capacities will be dismissed.

C.   THIRD THEORY:  VIOLATION OF JENKINS' RIGHTS

        Glasgow's third theory is untenable.  In order to prevail in a negligence claim under Nebraska law, a plaintiff must prove a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and damages.  *Gaytan v. Wal-Mart*, 289 Neb. 49, 56, 853 N.W.2d 181, 192 (2014) (citing *A.W. v. Lancaster Cty. Sch. Dist. 0001*, 280 Neb. 205, 784 N.W.2d 907 (2010)).  "The duty in a negligence case is to conform to the legal standard of reasonable conduct in the light of the apparent

-20-

risk." *Id.* at 56-57, 853 N.W.2d 192.  "The question whether a
legal duty exists for actionable negligence is a question of law
dependent on the facts in a particular situation." *Id.*  "But it
is for the fact finder to determine, on the facts of each
individual case, whether or not the evidence establishes a breach
of that duty*."  A.W.*, 280 Neb. at 210-11, 784 N.W.2d 907, 913.
In order to evaluate whether a tort duty exists, courts consider
"(1) the magnitude of the risk, (2) the relationship of the
parties, (3) the nature of the attendant risk, (4) the
opportunity and ability to exercise care . . . and [5] the policy
interest in the proposed solution." *Id.* at 211, 784 N.W.2d 907,
913-14; *see also id.* at 218, 748 N.W.2d at 918 stating
("foreseeability is not a factor to be considered by courts when
making determinations of duty).

        The issue in the Third theory is essentially a question
of standing.  In Glasgow's complaint, the plaintiff attempts to
blend different theories into a cognizable negligence claim.
First, Glasgow argues that the defendants owed a duty to Jenkins,
as a Nebraska inmate, and the defendants breached that duty.  *See*
Filing No. 5, at 18.  Assuming, without deciding, that such a
duty and breach exists, the duty does not apply to Bradford.
There is no relationship between Bradford and Jenkins' care while
incarcerated.  There is no risk to Bradford for the defendants'

breach in caring for Jenkins.  Policy considerations also weigh heavily into this finding.  If Bradford can assert Jenkins' breached-duty claim, what would stop any citizen from asserting the breached-duty claim of anyone and everyone?  Therefore, Glasgow cannot seek damages for the defendants' alleged breach-of-duty to Jenkins.

In order to include Bradford, Glasgow asserts a second, but very similar, purported duty, to wit, the defendants owed a duty to all citizens of Nebraska to correctly evaluate and treat inmates pursuant to contract and law.  *See id.*  This asserted duty is beyond the strictures of law for many of the reasons previously discussed.  The magnitude of risk is minimal.  The failure of Nebraska and its employees to adequately care for inmates has very little, if any, direct effect on the non-incarcerated citizens Nebraska.  Similarly, the relationship between non-incarcerated Nebraskans and incarcerated Nebraskans is tenuous in terms of duties.  Furthermore, policy interests discourage suits from non-incarcerated Nebraskans concerning the care of incarcerated Nebraskans.  For the foregoing reasons, the Court finds that the defendants owed no duty to Bradford or Glasgow concerning Jenkins' care while incarcerated.  Therefore, defendants' motions to dismiss the Seventh, Eighth, and Ninth Causes of Action against all defendants will be granted.

D.   ALL CLAIMS AS AGAINST CITY DEFENDANTS, COUNTY DEFENDANTS,
     AND CCS[2]

          The motions of the City Defendants, County Defendants,
and CCS to dismiss Glasgow's claims should be granted.  First,
the amended complaint is simply devoid of any plausible
allegation against these defendants.  As discussed above,
Glasgow's amended complaint fails to articulate a cognizable
Constitutional claim.  Furthermore, in her reply brief, Glasgow
ethereally states that the City and County Defendants knew of
Jenkins' criminal activities and criminal propensity.  The
knowledge of a criminal's history or propensity for recidivism
are not claims upon which relief can be granted.  If the
knowledge of criminals, past or future, were a violation of the
Constitution, nearly every government employee would be mired in
perpetual litigation.

          As to CCS, Glasgow failed to plead in the § 1983 Causes
of Action that CCS engaged in an unconstitutional policy or
custom.  *See* Filing No. 5, *Smith v. Insley's Inc.*, 499 F.3d 875,

---

          [2]  The briefs on this issue include Filing No. 14 (City
Defendants' brief), Filing No. 11 (County Defendants' brief),
Filing No. 9 (CCS' brief), Filing No. 28 (County Defendants'
reply brief), Filing No. 29 (City Defendants' reply brief),
Filing No. 27 (CCS' reply brief), Filing No. 25 (Glasgow's
response brief).

880 (8th Cir. 2007); *Crumpley-Patterson v. Trinity Luth. Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004).

Second, Glasgow failed to address numerous arguments raised by the City Defendants, County Defendants, and CCS. *See* Filing No. 25, at 15; Filing No. 27, at 4.  Pursuant to Nebraska Local Rule of Civil Procedure Section 39.2(c), the Court deems that Glasgow has abandoned those arguments.  For these reasons, the motions of the City Defendants, the County Defendants, and CCS (Filing No. 10, Filing No. 13, Filing No. 8, respectively) to dismiss all claims against them will be granted. A separate order will be entered in accordance with this memorandum opinion.

DATED this 18th day of February, 2015.

BY THE COURT:

/s/ Lyle E. Strom

_____

LYLE E. STROM, Senior Judge
United States District Court